# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 5, 2009

## STATE OF TENNESSEE v. MITCHELL GARNER

**Direct Appeal from the Criminal Court for Shelby County**
**No. 07-02157    Paula Skahan, Judge**

**No. W2008-01333-CCA-R3-CD  - Filed February 18, 2010**

The Appellant-Defendant, Mitchell Garner, was convicted by a Shelby County jury of aggravated sexual battery, a Class B felony. The trial court sentenced Garner as a violent offender to the maximum sentence of twelve years in the Tennessee Department of Correction. On appeal, he claims: (1) the insufficiency of the evidence; and (2) the trial court erred in imposing the maximum sentence because it misapplied two enhancement factors. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, and J. C. MCLIN, JJ., joined.

Larry E. Fitzgerald, Memphis, Tennessee, for the Defendant-Appellant, Mitchell Garner.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Betsy Carnesale, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

At trial, the victim, Cheryl Benson, testified that she stayed at a motel with her boyfriend on the night of December 16, 2007. The victim was addicted to crack cocaine, and she used crack cocaine that evening. In the early morning hours of December 17, she left the motel by herself to obtain more crack cocaine. The victim testified that she was a prostitute, but she did not leave the motel room to work as a prostitute. She wore blue jeans, a shirt, and a brown leather jacket. She also possessed a pocket knife that she carried for protection.

After leaving the motel room, the victim started walking down the street when Garner called to her from his semi-trailer truck. Garner is a large, black man weighing almost four hundred pounds. His truck was parked in an empty lot across from the motel. She said Garner got out of his truck and they talked in the parking lot. The victim testified that:

> [Garner] told me to come here and, you know, I said I was high off of drugs. Well I wasn't that high. He told me come here. He said I got $30 for a date and I want half and half for my 30. I told him no, I was not doing nothing. So I walked away. He grabbed me when I was walking away. He wrestled me down.
>
> . . . .
>
> Ooh, Lord. He wrestled me down and he told me you didn't want to date me, you didn't want to date me, you didn't want to date me. I said no, I said I'll go on and date you. He said – – he started beating me real bad and choking me.

The victim testified that she was hit a "whole lot of times," and Garner threatened to kill her. She pulled out her knife, but Garner took possession of it and cut her wrist and mouth. At some point, Garner pulled the victim's pants down and digitally penetrated her. She was unsure if he penetrated her with his penis. She could not recall how her clothes came off. The victim said she struggled to remember everything that occurred because she repeatedly "went out" as a result of the choking. She testified that the attack lasted multiple hours. The attack ended after a police officer pulled somebody over near Garner's truck. The victim said Garner "got off me real fast and ran around the truck and tried to jump back in it." The victim told the police that she was beaten and raped.

On cross-examination, the victim denied telling the police that a white man, Chad Harris, was in the passenger seat of Garner's truck. She testified that during the attack, she did not see anyone other than Garner. She said she never entered Garner's truck, and she denied breaking his windshield. As a result of the attack, the victim spent four days at the intensive care unit and seven additional days at the hospital.

Officer Justin Rice of the Memphis Police Department testified that around 2:00 a.m. on December 17, he made a traffic stop during which he heard a woman screaming from across the street. He stated, "[A] lady comes walking out from behind the semi not wearing anything, that I recall she was naked, covered in blood. I think she had like a bra on that was twisted around her neck, if I recall right." Officer Rice said the victim walked towards him and then collapsed. He looked towards Garner's truck and saw Garner "enter the semi making moves like he was trying to start it and get out of there." Officer Rice quickly got

-2-

into his squad car and pulled it directly in front of Garner's truck, which was still parked. Officer Rice stated:

> I go to his side of the semi. I tell him to open the door. He opens the door and I order him out at gunpoint because I could see that he's got blood on his shirt, blood on his pants, blood, like, fresh scratches and stuff, what appeared to be fresh scratches and stuff on his face.

After Garner was detained, Officer Rice tried to speak with the victim. He said she went in and out of consciousness and was unable to provide coherent responses. Officer Rice found a bloody pocket knife on the ground near Garner's truck. He also found blood at the back end of the truck. Officer Rice did not believe the scratches on Garner's face were caused by a knife.

Officer Rice said Garner offered several different stories about what happened. Officer Rice stated that "one was how [the victim] was trying to rob him, you know. And another one was she had set him up to be robbed and he was defending himself and stories along those lines." Officer Rice testified that there was another person in Garner's truck, Harris, who occupied the passenger seat. Officer Rice said he did not notice Harris until after Garner was handcuffed.

Officer Adam Orr of the Memphis Police Department said he responded to Officer Rice's request for additional assistance over the radio. Upon arrival, he saw Officer Rice ordering Garner out of the driver's seat of Garner's truck. After Garner was handcuffed, Officer Orr said Garner provided several explanations for what happened. Officer Orr stated, "One of the reasons was that she came over there naked and bleeding. And the other one was that she was trying to rob him." Officer Orr said Garner had scratches on his face, but no knife wounds. Officer Orr found the victim lying down on the street about forty yards from Garner's truck. He said she was naked, and her face was covered in blood. Officer Orr examined the semi-truck, and he noticed that it had a broken window.

Lieutenant Donald Crowe of the Memphis Police Department testified that at 3:30 a.m. on December 17, he went to the hospital to investigate the victim's medical condition. He stated, "She suffered severe trauma to her face and both eyes were swollen shut. She had cuts on her face. She was bleeding. Her hand was mangled and bleeding." Lieutenant Crowe asked the victim how she was harmed, and she said "a white person had stopped and offered her money for sex; when she refused to perform the sex act, that she was attacked."

Officer David Payment of the Memphis Police Department testified that he was part of the Crime Scene Unit that investigated the scene of the victim's attack. He placed into evidence the two shirts worn by Garner: a white undershirt and a striped polo shirt. Both of

these shirts contained stains. Officer Payment also collected the victim's clothes, which were not bloody.

A forensic nurse for the Memphis Sexual Assault Resource Center testified that she examined the victim in the trauma intensive care unit. The victim had sustained multiple injuries all over her body, including lacerations to her head, wrist, and arm. The victim told her that Garner penetrated her with his fingers, but not his penis. The forensic nurse found blood in the vaginal area, which she said was consistent with someone who had been penetrated in the manner described by the victim. The forensic nurse was not, however, certain about the cause of the bleeding.

Sergeant Clyde Jefferson of the Sex Crimes Unit of the Memphis Police Department testified that he questioned Garner at the police station. He said Garner "didn't really give a statement, just basically denied everything kind of." Sergeant Jefferson also talked with the victim on the day after the attack. According to Sergeant Jefferson, the victim said Garner penetrated her with his fingers and attempted to penetrate her with his penis. The victim said no one else was involved in the attack.

A forensic biologist for the Tennessee Bureau of Investigation examined several items taken from the scene of the attack, including the victim's pocket knife and Garner's white tank top and striped polo shirt. The forensic biologist testified that the bloody knife contained the victim's DNA. He did not find Garner's DNA on the knife. The forensic biologist said both of Garner's shirts contained blood with the victim's DNA. He also examined vaginal swabs taken from the victim, and he determined that there was no semen or sperm cells on the swabs.

The defense's only witness was Garner, who testified that he was in Memphis because of a trucking trip from Arkansas to Chicago. When the attack occurred, he was on a mandatory break. He saw the victim while driving with his co-driver, Harris. The victim approached his truck and asked to "entertain" he and Harris for thirty dollars. Garner said Harris offered to pay for both of them. Garner testified that the victim entered the truck, undressed, and began performing oral sex on Harris. After Harris was unable to obtain an erection, the victim stopped performing oral sex. Garner testified that Harris became upset and threw the victim's clothes out of the truck. The victim then retrieved her clothes and threw a stone through the truck's windshield. The victim was upset because she had not been paid. Garner said he exited the truck and talked with the victim in an effort to calm her down. When he walked away from her, he claims she hit him in the back of the head. She then cut his forehead with a knife. Garner said he responded by hitting the victim in the face more than fives times. He denied making any sexual contact with her. Garner admitted that he had a prior conviction for trafficking drugs.

Garner was convicted of aggravated sexual battery which has a sentencing range between eight to twelve years. See T.C.A. § 39-13-504(b) (2005); T.C.A. § 40-35-112(a)(2) (2005). At the sentencing hearing, the trial court found that no mitigating factors were present under Tennessee Code Annotated section 40-35-113. It did, however, find that the following enhancement factors were applicable under section 40-35-114:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;

. . .

(5) The defendant treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense;

(6) The personal injuries inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great;

. . .

(9) The defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense;

. . .

(13) At the time the felony was committed, one (1) of the following classifications was applicable to the defendant:

. . .

(G) On any other type of release into the community under the direct or indirect supervision of any state or local governmental authority or a private entity contracting with the state or a local government[.]

With regards to factor (9), the trial court stated:

I do find that the defendant took the knife that the victim was attempting to use to defend herself. I do not find that the victim stabbed the defendant, provoked this in any way, but that the defendant took the knife from her and used it against her in this case.

As to factor (13), the trial court noted that Garner was convicted in Ohio of sexual battery in 2001. Consequently, he was required to register as a sex offender in Ohio. The trial court stated:

> [Garner] wasn't on what we typically think of as regular release. He was on release into the community as a convicted sex offender, required to register with the state as to where he was living. So he was required to be monitored, just so they could help prevent this type of attack on another person. . . .
>
> I do find number thirteen to be applicable in this case. That he was under a type of release status under court ordered requirement for sex registries.

Based on these findings, the trial court ordered that Garner serve the maximum sentence of twelve years as a violent offender.

## ANALYSIS

**I. Sufficiency of the Evidence**. Garner claims there was insufficient proof of unlawful sexual contact with the victim, and therefore the evidence was insufficient to support his conviction for aggravated sexual battery. In response, the State argues the evidence was sufficient to support Garner's conviction. Upon review, we agree with the State.

When challenging the sufficiency of the evidence, the defendant "has the burden of illustrating why the evidence is insufficient to support the jury's verdict." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997) (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)). This court must consider "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This standard applies to convictions based upon direct, circumstantial, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from it. Bland, 958 S.W.2d at 659. This court has often stated, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." Id. (citation omitted). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by

the trier of fact. This Court does not reweigh or reevaluate the evidence." Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)).

The offense of aggravated sexual battery is defined under Tennessee Code Annotated section T.C.A. section 39-13-504 as follows:

(a) Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:

(1) Force or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon;

(2) The defendant causes bodily injury to the victim[.]

. . .

Garner only challenges whether there was sufficient proof of unlawful sexual contact, which is defined as:

the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]

T.C.A. § 39-13-501(6) (2005).

Here, Garner failed to show that the evidence was insufficient to support his conviction. In his brief, he asserts that the victim's testimony was unreliable and that Garner's "version of what happened is more credible." On appeal, we will not reweigh or reevaluate the evidence, as questions concerning the credibility of witnesses are to be resolved by the trier of fact. See Bland, 958 S.W.2d at 659. Here, the jury determined that the victim was more credible than Garner, and we will not override that determination. The victim testified that Garner digitally penetrated her. A forensic nurse testified that she examined the victim soon after the attack, and there was blood in the victim's vagina. The forensic nurse said the presence of blood was consistent with someone who was penetrated in the manner described by the victim. Based on this proof, a rational jury could conclude that Garner intentionally touched the victim's intimate parts. Garner has not met his burden

of illustrating why the evidence is insufficient to support the jury's verdict, and therefore he is not entitled to relief.

 II. **Sentencing**. Garner claims the trial court erred in ordering the maximum sentence because it misapplied two enhancement factors under Tennessee Code Annotated section 40-35-114. First, he contends factor (9) was not applicable because the record shows he did not possess or employ the pocket knife used during the attack. Second, Garner asserts that factor (13) was not met because, as a sex offender, he was not under the direct or indirect supervision of any state or local governmental authority. In response, the State argues that both factors were applicable, and therefore the trial court did not err by ordering the maximum sentence. Upon review, we agree with the State.

 On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2005). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant, not the State, has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d) (2005), Sentencing Commission Comments. This means that if the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Here, the record shows that the trial court followed the requirements of the Tennessee sentencing act and considered all the relevant facts when Garner was sentenced. Therefore, our review is de novo with a presumption of correctness.

 The trial court did not err in finding that enhancement factor (9) was applicable. The victim testified that when she pulled out her pocket knife, Garner grabbed it and cut her wrist and mouth. A forensic biologist testified that the bloody knife contained the victim's DNA. A forensic nurse testified that the victim had lacerations on her head, wrist, and arm. The record supports the trial court's finding that Garner possessed or employed a deadly weapon during the commission of the aggravated sexual battery.

 The record also supports the trial court's determination that factor (13) was applicable. Factor (13)(G) broadly refers to "any other type of release into the community under the direct or indirect supervision of any state or local governmental authority . . . ." T.C.A. § 40-35-114(13)(G) (2005). Garner was required to register as a sex offender in Ohio where he was convicted of sexual battery. As a sex offender, Garner was under the supervision of the state of Ohio. This was evident in 2004 when Garner was convicted by an Ohio court of

violating the state's sex offender registry law. The trial court did not err in applying factor (13). Garner has not met his burden of showing the impropriety of his sentence, and therefore he is not entitled to relief.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE